S. T. J. PEEVY AND ANOTHER v. M. L. HURT AND ANOTHER.

1—A judgment recovered in 1841 against an administrator operated, by the act of February 5th, 1840, as a lien upon a land certificate in the hands of the administrator; and this lien could not be divested or defeated by a survey subsequently made under the certificate and a patent issued thereon to the heirs of the grantee of the certificate.

2—The heir, in such case, would hold the legal title as a trustee for the judgment creditor, until the debt should be paid.

3—By repeated decisions of this court,.land certificates have been regarded, not as mere *choses in action*, but as *choses in possession*, and therefore as a vendible commodity in the hands of a personal representative, for the payment of debts.

4—When an administrator, by order of the Probate Court, sells a located but unpatented land certificate, for the payment of debts, the purchaser acquires the certificate with all its incidents, and among them any survey which may have been made under it.

5—As between the heir of the intestate and the creditor for whose benefit the certificate was sold, the equity of the creditor had precedence by express provision of law, which subjected both real and personal estate in the hands of the personal representative to the payment of creditors, before the heir could take the legal estate cast upon him by descent or operation of law.

6—In this case, the sale of the certificate under the order of the Probate Court, was the sale of the equitable lien of the creditor, created by his judgment, and given by the law to secure its payment, and which, by authority of the same law, had priority over the inheritable right of the heir. By such sale and the confirmation of it by the Probate Court, this prior right and equity passed to the purchaser, with all its incidents.

7—This prior right and equity constitutes in the purchaser, and those holding ·under him, an equitable title to the land acquired under the certificate, paramount and superior to the legal title, which has since been vested in the heir by patent from the State; and it is, and ought to be, as available as a defense against that legal title, as though it were asserted as a cause of action against the holder of such legal title.

APPEAL from Smith. Tried below before the Hon. Samuel L. Earle.

This suit was originally instituted in the county of Van Zandt, in 1857, but in 1863 the venue was changed to Smith

county.    The land in controversy was the headright league and labor of Thomas J. Shaw.    The action was trespass to try title, brought by Sophia T. J. Peevy, and her husband, W. D. Peevy, against Catherine Gilleland and William M. Hurt. The plaintiffs claimed title in Sophia T. J. Peevy as the heir of Thomas J. Shaw, the grantee of the certificate.

The defendant, Catherine Gilleland, disclaimed, and Hurt, by answer and plea of intervention, asserted title in himself, deraigning it under a sale of Shaw's headright certificate, made in January, 1847, under order of the Probate Court, by Alex. Horton, administrator *de bonis non* upon Shaw's estate. As showing the former value of such certificates, it may be stated that, in November, 1846, this one was appraised at $475, and was sold in January, 1847, for $400, on twelve months' credit.    The appellees are the heirs of W. M. Hurt, deriving title under him from the same sale.

The land in controversy was surveyed in 1841 under this certificate, and in August, 1847, patent issued to the heirs of Thomas J. Shaw.

There are very many matters of fact in the record of this cause besides those above set out.    But they were brought into the controversy for the purpose of impeaching the validity of the orders of the Probate Court, and thus invalidating the sale of the certificate and the title derived under it.    And as this inquiry into the proceedings in the Probate Court is held to be precluded, there seems to be no occasion to narrate the facts on which it was attempted.

The cause came to trial in the court below on the 14th of December, 1868, when the parties waived a jury and submitted all issues to the court.    Judgment was rendered in favor of the defendants, and the court decreed that the legal title of the heirs of Shaw be divested out of the plaintiffs and be vested in the defendants, with writ of possession.

A new trial being refused, the plaintiffs appealed.

*S. P. Donley,* for the appellants, argued at length the inval-

idity of the proceedings in the Probate Court, for the purpose of showing that the sale of the certificate was void, and, in consequence, that no title could spring out of it.

*J. C. Robertson*, for the appellees.

By the filing of the petition in this case by Horton the Probate Court acquired jurisdiction of the subject matter. In Poor v. Boyce, 12 Tex. R., 449, the court said: "The petition of the administrator gave the court jurisdiction. All other questions, in the absence of fraud, are concluded by the judgment. In the case of Lynch v. Baxter, it was determined that it was not essential to the title of the purchaser of property at an administrator's sale that the record should show a necessity for the sale. The order of sale is conclusive of that question until it be set aside by a proceeding having that object distinctly in view, and the purchaser, in the absence of fraud, will be protected." (Lynch v. Baxter, 4 Tex., 431; Finch v. Edmondson, 9 Tex., 504.)

In Lynch v. Baxter the judge said: "That the Probate Court has jurisdiction over the estates of deceased persons can not be doubted; that this jurisdiction was brought into exercise directly on the property, by the petitioner praying for a decree or order of sale of the land, is equally clear." (4 Tex. R., 445.) This case shows that judgments are of two kinds—those which are void and those which are voidable. "Had the court competent jurisdiction to render such a judgment?" If it had, however erroneous it may be, "that judgment can not be controverted until it has been reversed or set aside by an appellate tribunal, in a proceeding having that object directly in view." (Id. 443.) "Let the rule be establised and continued which requires the record to disclose every material fact, and which makes indispensible to the passing of title, everything which the statute (requires) prescribes as preparatory to a decree, a large majority of the titles acquired through such a channel would be overturned." (Id. 444.)

The Probate Court having jurisdiction, although bad on

appeal, the proceedings are invulnerable from a collateral attack. That the court had jurisdiction to remove an administrator can not be questioned. That the court had jurisdiction, upon the petition of the administrator, to order the sale of land, can not be questioned.

Then, in the absence of fraud, the judgment of the Probate Court, on the petition of the administrator, ordering the sale of the land, and, on the return of the account of sales, confirming the sale and ordering the administrator to convey to the purchaser, is conclusive until reversed on appeal, or by an appellate court, in a proceeding having that object directly in view.

" The only way this judgment ordering and confirming the sale can be attacked is for fraud. In the absence of fraud, the only remedy by which the sale can or could be set aside is by appeal, writ of error, or *certiorari.* Every other mode of attacking the sale is collateral. In Lynch v. Baxter, 4 Tex., 447, 445–6 ; 2 Howard's Rep., 342–3 ; 12 Tex. Poor v. Boyce, 449–50.

· " Where the fiduciary character of one acting as administrator is recognized by the Probate Court, as between the heirs and those dealing with the acting administrator, his authority can not be drawn in question for the purpose of invalidating his lawful acts. (Idem—12 Tex., 449–50.)

" It is also said in Poor v. Boyce, that third persons ' are not bound to seek further than him who acts as executor, provided he is proved to have been acting at the time in the character of executor.' (Idem, 12 Tex., 450 ; 1 Williams on Extrs., 158–9 ; Hurt v. Horton, 12 Tex., 285 ; Williams on Extrs., 404.)

" Even a *bona fide* payment made to an administrator, whether the appointment be void or voidable, will be a legal discharge of the debtor. (Idem.)

" Everything is presumed in favor of the judgment of the court, in the absence of fraud. (Baker v. Coe, 20 Tex., 436.)

" Finch v. Edmondson is relied on as the only exposition of the law of 1846. In that case there was no petition filed by

the administrator, and therefore the court said the jurisdiction was not brought to bear on the question. (9 Tex., 514–15.)

"The case of Finch v. Edmondson was decided on the question of fraud. (See Alexander v. Maverick, 18 Tex., 194.)

"The case of Hurt v. Horton referred to, and the court say: 'There the property was legally sold, and the administration finally closed and settled.' (Idem, 197.)

"See Fisk v. Norvel, where it is shown that where the court had jurisdiction to appoint an administrator, and improperly did so, the act is only voidable, and can not be collaterally attacked; it must be done by appeal, etc. (Fisk v. Norvel, 9 Tex., 16.)

"The judgment cannot be collaterally attacked. See Burdett v. Silsbee, 15 Tex., 616.

"A deed need not be made. The defendants have a perfect equitable title without the deed. There was a petition for the sale, an order of sale, the sale was made, Hurt was the purchaser, the sale confirmed by the court, the purchase money paid by the purchaser. A deed was unnecessary. (Bartlett v. Cocke, 15 Tex. R., 471; Miller v. Alexander, 8 Tex., 36.)

"In Bartlett v. Cocke, the plaintiffs would not have any standing in equity. The purchase money went to pay the debts of their ancestor, and no offer to refund the money. (15 Tex., 479.)

"That the sale was necessary is the conclusive presumption from the record and order of sale; that it was fairly made and the proceeds honestly applied is not questioned, no attempt or offer made to refund the purchase money. Yet notwithstanding these equities, the attempt is made to dipossess the purchaser. The decree bound the estate and all who are parties or privies to it.

"The sale was necessary for the payment of the debts, and they have been paid by the proceeds, and it would be a scandalous iniquity to suffer an innocent purchaser to be entrapped and stripped of both money and land, giving the one over to the creditors, and restoring the other to the heirs.

"Such injustice can find no sanction in principles of law fairly construed and administered, with a view to promote honesty and fair dealing." Such was the forcible language of Chief Justice Hemphill, in Bartlett v. Cocke, 15 Tex. 479. These principles of equity apply with all their force to this case.

LINDSAY, J.—Notwithstanding the voluminousness of this record, and the very protracted and multifarious pleading and evidence in the case, it is at last a simple contest between a creditor and the heir-at-law of a debtor intestate. .

At the death of the ancestor of the heir, he was indebted to the creditor in a sum which was afterwards reduced to a judgment by suit against the administrators. At the time of the judgment the administrators held in their possession personal property of the intestate, consisting mainly of *choses in action,* amounting to about six hundred dollars, and a certificate for a league and labor of land. This was about all the estate of the intestate reported and returned to the Probate Court by the administrators. It appears that the creditor could not enforce the collection of his judgment by execution against the administrators, nor could he collect his claim in any other way, because the law did not authorize the issuance of an execution against the estate of a decedent in the hands of his personal representative. The judgment was to be paid in the due course of administration. Nevertheless the judgment operated, by the law of the 5th of February, 1840, as a *lien* upon all the land and *choses in possession* in the hands of the administrators, at the time of the judgment, which were then in the county where the judgment was rendered. By repeated recognitions in the decisions of this court, land certificates have been regarded as *choses in possession,* and not mere *choses in action,* and, therefore, a vendible commodity in the hands of the personal representative for the payment of debts. Hence, the judgment *lien* attached to this certificate before it was carried into grant, and was a positive *legal lien.* The subsequent

acts of the officers of the law, in making the survey and location, and issuing the patent, in the name of the heir, would not and could not divest the legal right thus acquired; and the appropriation and grant of land, under the certificate, to the heir, would enure to the benefit of the judgment creditor until his debt was satisfied, and the heir would only be the holder of the legal title for the use and benefit of the creditor. The holding of the legal title by the heir would only be as a trustee for the creditor until the debt was paid. This would have been the legal consequence and conclusion, if the certificate, which is treated as a sort of *chattel* by the law of Texas, had never been sold by the administrator, under an order or decree of the Probate Court.

By virtue of the order and decree of the Probate Court, the administrator of the debtor sold the certificate for the league and labor before the emanation of the grant from the State to the heir-at-law, and while the title was still inchoate and imperfect, and subject to be lifted and changed by the legal claimant, as well as to various other contingencies, which might defeat the special and specific appropriation, survey and location of the identical land now, or in any other case, in controversy. If the certificate was the subject of sale in the hands of the personal representative, under a decretal order of the Probate Court, then all the incidents attached to the certificate passed to the purchaser under the sale. It would be absurd and preposterous to suppose that nothing but the mere paper and ink was acquired by a purchaser under such sale. It was the sale of an equity. It did not create a right to any specific land, but it vested a right to *acquire* land in quantity, and upon the terms of the certificate. Both the right of the heir and the right of the purchaser, under the administrator, were mere equities until the *legal* title to the thing, or the land, was perfected by being carried into grant. The debatable ground between the purchaser and the heir was simply as to the priority of those equities. As between the heir and the creditor, for whose benefit the sale was made, the equity of the creditor had.

precedence, and was given priority by express law, which sub-jected both real and personal estate in the hands of the per-sonal representative to the payment of creditors, before the heir could take the legal estate cast upon him by descent, or by operation of law.  This provision of law is the reservation of an equity against a perfect legal estate, and is made paramount to both the legal and equitable estate of the heir, and is enforcible in all courts.  For a stronger reason, then, when the estate of the heir is only an equity, the right of the creditor to the payment of his debt out of such an estate is prior and paramount to the right of the heir to take and hold.

But it has been contended that a location and survey of land, under the certificate, without the patent, or final act of the government, will authorize, under the laws of Texas, the bringing of an action of trespass to try title.  True, but the peculiarity of the judicial system of Texas is not borne in mind, or justly conceived, when this argument is resorted to. The action of trespass to try title has, in some of its character-istics, some slight similitude to the action of ejectment at the common law, in which the plaintiff must recover, if he recovers at all, upon the strength of his *legal* title alone.  But in the action of trespass to try title to land in Texas, he may recover as well upon an *equitable* as upon a *legal* title.  Hence, such an argument contributes nothing towards the elucidation of the point now before the court.  The sale of the certificate, under the order of the Probate Court, was the sale of the equitable *lien* of the creditor, created by his judgment, which the law had given to secure the payment of his just claim, and which had priority over the inheritable right of the heir by the authority of that same law.  This prior right and equity passed by the judgment, the sale under it, and its confirmation by the Probate Court, vesting this prior equity in the purchaser, with all its incidents.

At the death of the intestate it was a simple equity, giving a right against the State, and even a right of compelling the State by suit to appropriate a definite quantity of land to the

proper claimant, when located, surveyed, and duly recorded, and to execute and deliver the last muniment of title—the patent. The certificate, therefore, was not land vested in the heir, either absolutely or *sub modo*. Neither did the location and recorded survey under it make it so, until the grant was actually made by the Government, but only the right to get the land thus specifically located and surveyed and recorded; and consequently was a mere equity, as well against the State as against all its citizens.

The intestate died in 1839. His widow, in conjunction with another, administered shortly thereafter. Judgment was obtained by the creditor, against the administrators in 1841. By operation of law it was a *lien* upon the real and personal estate of the intestate in the county at the time of the judgment, but to be paid in the due course of administration. That administration continued until 1846, without the satisfaction of the judgment. The judgment creditor then petitioned the Probate Court, as he was authorized to do under the law, to sell the only thing, this *chose in possession*, in the hands of the administrator, belonging to the estate, for the satisfaction of his judgment. The order was decreed, the sale of the certificate made, the ancestor of the defendants in error became the purchaser, the purchase money was paid by him, and the report and sale by the administrator confirmed by the court; and the descendants of the purchaser, the defendants in error, are now in possession of the land, appropriated and granted by the State upon that certificate—for which land this action of trespass to try title has been brought by the plaintiffs in error.

Although the legal title has been vested in the heir-at-law since the sale and purchase of the certificate, this court is of opinion that a superior and paramount title in equity is in the defendants in error. And while, in this action, a superior equity is available as a sword of offense, even against the legal title, it is, and ought to be, equally a shield of defense against the same character of title.

It is, however, urged that there were many errors committed

in the Probate Court in the progress of the administration. In reply to this the court can only say, that the verity and sanctity of judicial records are not to be assailed in this collateral way. Reason, as well as public policy, if this court was not fortified by an almost unbroken series of judicial determinations upon the point, would forbid this court from going behind the solemn judgments of courts having jurisdiction of the subject matter, and reagitating the questions sought to be brought into issue in this investigation. It is needless to refer to authorities upon this subject. It has been ably and elaborately argued, both in and out of the State, and may be considered as too well settled to be again seriously disturbed.

The court is therefore of opinion that the judgment of the court below ought to be affirmed, which is accordingly done.

Affirmed.